MARY MARTIN, by Joseph Dean her next friend, *appellant,* vs. NORRIS L. MARTIN, *respondent.*

Where real estate was purchased and paid for in part with the money or funds of the husband, and with his assent the conveyance was taken to a trustee who simultaneously gave a mortgage on the estate for the residue of the purchase money, and also with the husband's assent executed a declaration of trust to the effect that the premises were held to the sole and separate use of the wife, subject to the mortgage; *held,* the rights of creditors not being in question, that the declaration of trust was valid and binding upon the husband, and that the husband had no interest in such estate.

Where real estate of a wife which is held subject to the marital rights of her husband is sold, the proceeds of such sale, being money or personal property, belong to the husband, subject only to the equitable right of the wife to a support therefrom; and equity will not interpose in such a case in her favor, where suitable provision is otherwise made for her, or where she is living in a state of unjustifiable separation from her husband.

Accordingly, where the wife owned a dower interest in four-sixths of certain real estate of which her former husband died seized, and owned in fee the remaining two-sixths, and the husband and wife united in a sale, and out of the proceeds of such sale the sum of $3000 was paid, without the husband's assent, upon a mortgage which encumbered the wife's separate estate; *held,* that the husband had a claim upon such separate estate to that extent.

But another sum of $2000 out of such proceeds appearing to have been paid upon the same mortgage with the husband's unqualified assent; *held,* that such payment was a valid appropriation of that sum to the wife's separate use, and that in respect to it the husband had no claim upon the separate estate.

APPEAL from chancery. The bill in this cause was filed before the vice chancellor of the first circuit, by Mary Martin against her husband Norris L. Martin, and Samuel Richards. her trustee. The assistant vice chancellor of that circuit, before whom the cause was heard on pleadings and proofs, made a decree which was modified by the chancellor on appeal to him. By one of the provisions of the decree as so modified, the husband was declared to have a lien upon the real estate which was the subject of the controversy, to the amount of $5000 and interest thereon, which had been paid in two sums of $2000 and $3000, upon a mortgage encumbering the premises. Mrs

Martin appealed to this court. The material .'acts are stated in the opinion of the court as delivered by WRIGHT, J.

*D.'D. Field,* for the appellant.

*H. B. Duryea,* for the respondent.

WRIGHT, J.  The bill in this cause was filed in the court of chancery to restrain the respondent from controlling or interfering in any way, with certain real estate alleged to be held in trust by one Samuel Richards, as the sole and exclusive property of Mrs. Martin, the appellant; also, to remove Richards from such trust, and to appoint a new trustee in his place under the sanction and authority of that court; with the further prayer that, in the mean time, a receiver of the rents, issues and profits of such real estate might be appointed, and such rents, issues and profits appropriated and paid to the now appellant.  Richards was originally made a party defendant to the suit.

The case is one exclusively between husband and wife; for, although it is apparent from the evidence,·that at the time of the purchase of the property which is the subject of controversy, and subsequently, the respondent was insolvent, no question affecting the.rights of creditors arises.  There are two principal and leading questions in the case.  1st. Is the subject matter of the controversy the separate and exclusive property of the appellant?  2d. What are the rights of the parties in the property arising from transactions subsequent to the creation of the alleged trust?  When the bill was filed the appellant had left her husband, and was living separate from him; but the proof fails, although an apparently strenuous effort was made on that point, to establish such a case of cruel treatment by the husband, as, for that reason, to justify the separation, and to call for the particular interposition of the court of.chancery in the appellant's behalf.  Conduct, it is true, was shown, inconsistent with good manners or an affectionate regard for the feel ings of a wife; but there was no proof ot violence, or other

manifestations of cruelty, rendering it unsafe for her to cohabit with him.   The evidence fell short of what courts of equity have regarded as an excuse for a wife leaving her husband in disregard of her marriage vows.   Still, it may be remarked, that although living apart from the respondent, no allegation was set up of unchasteness or immorality on the part of the appellant ; nor any attempt made to impeach the purity of her character and morals.

The evidence shows that on the 9th of December, 1829, pursuant to an agreement fully understood by the parties to this suit, John Haggerty and wife conveyed the premises in question (being a farm on Long Island) to Samuel Richards.   Mr. Haggerty testifies that both the parties (Mr. and Mrs. Martin) conducted the negotiation with him for the purchase of the farm, and he understood from both of them that it was purchased for her exclusive use and benefit, with her means, and that she might have a place as her home from which she might not be disturbed.   The purchase money agreed to be paid was twelve thousand dollars.   Of this sum, three thousand dollars was paid at the execution of the deed, by the transfer to and acceptance by Haggerty of a mortgage for that amount held by the respondent on certain Brooklyn lots ; and the balance was secured by bond and mortgage of Richards upon the premises.   Whether this sum of three thousand dollars was the proceeds of the property of the wife or the husband appears to have been made a question in the court below ; but it was scarcely alluded to in the argument before us ; and it is quite clear that in either view the rights of the parties would not be changed.   The mortgage was transferred, and the payment made, by the act and consent of the husband ; and if it were the absolute property of the husband, so long as creditors did not interfere, he had the right to settle it upon his wife for her sole and separate use.

Simultaneously with the execution of the deed from Haggerty to Richards, a declaration of trust was executed by Richards. This instrument recited that Richards, at the request of the appellant, had consented to become trustee of the lands con-

veyed to him by Haggerty, and which conveyance from Haggerty was to be contemporaneous with it; that three thousand dollars of the trust moneys had been appropriated for the payment of so much of the purchase money of the land, and the residue, amounting to nine thousand dollars, was to be secured by bond and mortgage; that the appellant had required that a declaration of trust should be executed, and that the instrument had been drawn for such purpose. The trusts declared by the instrument were, 1st. To indemnify Richards, his heirs, executors and administrators, from and against the bond and mortgage executed by him for securing the balance of the purchase money, and all payments of principal and interest thereon; for the purpose of which indemnity, Richards, his heirs, executors, administrators and assigns, were empowered to sell the premises or any part thereof, or mortgage or demise the same, as he or they should think fit, and apply the proceeds thereof to such indemnity. 2d. Being kept indemnified, that Richards, his heirs and assigns, at the election, from time to time, of Mrs. Martin, and during her lifetime, should permit her and her family to occupy the premises, or receive the rents, issues and profits thereof, to her sole and separate use, to be paid on her sole and separate receipt, and to be accounted to her solely and separately, and to be free from the debts, contracts, and interference of her husband, present and future. 3d. Being indemnified as aforesaid, Richards, his heirs and assigns, should, upon the request in writing of Mrs. Martin, witnessed by one witness, convey unto such person or persons, and for such prices, and upon such terms as she should think fit, all and singular such premises, and give receipts and acquittances for the purchase money thereof, which should fully discharge the purchaser or purchasers for the price expressed therein to be paid by them. 4th. That on the death of Mrs. Martin, Richards, his heirs, executors and assigns, being indemnified, should convey the premises unto such person or persons, in such estates, and upon such uses and trusts, as Mrs. Martin should by writing in the nature of a will appoint, declare and direct; and in case no such instrument should exist at the time of her decease, then to convey

Martin *v.* Martin.

the premises unto the heirs at law of Mrs. Martin, in the same shares, proportions, and estates, as if she had survived her husband.

About the time the purchase was made, and the declaration of trust given, the appellant went into the occupation of the premises, and, the proof shows, continued to principally manage and control them until 1838. The respondent, who appears to have been pursuing no regular employment or business, and who was evidently without means, except what should be derived from his wife's property, also resided upon the premises, and although he superintended the improvement of them, whilst she continued in their occupation, he uniformly treated them as the exclusive property of his wife, taking receipts for labor performed thereon in her name; and consulting her in relation to renting a portion of them. There can be no doubt, also, from the admissions of the respondent in his answer, and the evidence, that he understood fully the purport, contents and effect of the declaration of trust. He was in no respect deceived, as he was the principal actor in obtaining it. His object clearly then was, as he stated to Haggerty, to secure a home for his wife, by her means, (a great deal of which had already been wasted,) and thereby secure one for himself. The declaration of trust was in his hand-writing, and he presented it to Richards for execution. It was executed and acknowledged by Richards, and delivered to the respondent, not conditionally, or as an escrow, but absolutely for the use of the wife, in furtherance of the original design of the parties as stated to Haggerty. This was an effectual delivery to vest in Mrs. Martin the rights declared by the instrument, and to divest the respondent of any equitable title in the property. It is alleged in the answer, that the declaration of trust was, without the respondent's consent or knowledge, placed upon record; but whether it was or not, could not alter or affect the rights of Mrs. Martin acquired thereunder. It became operative from its execution by Richards and delivery to the husband for her use.

There is, therefore, no difficulty in determining the first question presented by the case. The subject matter of the

Martin *v.* Martin.

controversy is, so far as the respondent is concerned, the sole and separate property of the appellant, and, as against him, she is entitled to the sole and exclusive use, and the rents, issues and profits thereof. Being indemnified against the principal and interest due or to become due on the mortgage given by him, it was the duty of the trustee to allow her to occupy the premises, or to receive exclusively the rents, issues and profits thereof, free from the debts, contracts or interference of her husband. The husband had no interest therein; and it is obvious that he did not design to have any that might be reached by creditors. Indeed, on the argument the ground was in effect abandoned that as between the parties to this litigation the trust was not a valid one, and the farm, prior to the payment of the sum of five thousand dollars on the mortgage given by Richards, the sole and separate property of the wife; for the entire argument of the counsel for the respondent related to his client's equitable rights in the property, growing out of transactions subsequent to the creation of the trust, and some three years after the appellant had entered into the use and occupation of the premises under it.

2. Do transactions subsequent to the creation of the trust give to the respondents any equitable rights in the property? This question is more difficult of solution than the first; and this difficulty mainly arises from the loose, imperfect and unsatisfactory manner in which the facts of the case are presented. We have a massive volume before us, the minutest proportion of which bears upon the question. Certain facts, however, are proved, and some others are admitted, that may enable us to arrive at a pretty satisfactory conclusion. It appears that in May, 1832, more than two years after the purchase of the property and the creation of the trust, and whilst Mr. and Mrs. Martin were living thereon, and paying semi-annually the interest on the mortgage of $9000 given by Richards, and apparently using and enjoying the property without any control or intervention of the trustee, Edward G. Miller, a son of the appellant, paid to Haggerty, in two several payments, one of $2000 and the other of $3000, the sum of $5000, in part pay

Martin *v.* Martin.

ment of the bond and mortgage of $9000 which Haggerty held on the property. It was admitted on the argument that this sum of $5000 was realized from the sale of the appellant's interest in certain real estate in the city of New-York, formerly belonging to a deceased husband, which interest consisted of a dower right in four-sixths thereof, and a fee in the remaining two-sixths. That the respondent knew of the sale of this New-York property to Edward G. Miller, and that he made no demand on the latter for the proceeds prior or subsequent to the payment in 1832 to Haggerty, and that he knew of the payment about the time it was made, is quite apparent; for he was a party with his wife to a deed executed to Miller in 1830, for a part of the property, and from the fact of his ordinarily paying the interest as it fell due on the Haggerty mortgage, (which interest was payable semi-annually,) he must have known that the mortgage was reduced to $4000, within six months at least after the payment had been made. In this interest of the appellant in the New-York property, the respondent Martin had a life estate subject to the equity of the wife for a sufficient settlement out of the dower fund, provided such settlement had not been made under the trust deed, or in some other way. At the time of the sale and the payment of this sum of $5000 to Haggerty, the respondent was in law entitled to receive the income of such sum, and had he brought his action at law to maintain his marital rights, a court of chancery would not have interfered, unless he had deserted his wife, or neglected to provide for her, and the income of the dower fund was absolutely required for her maintenance and support. It is clear, then, that the proceeds of the interest of the appellant in the New-York property, could not be legally used to proportionably discharge an incumbrance on the wife's separate property, and thus divest the respondent of all interest therein without his acquiescence, or some agreement on his part to that effect. That he might acquiesce in, or agree to an appropriation which forever afterwards would estop him from setting up any claim growing out of his marital rights, is quite manifest.

The counsel for the appellant contends that the respondent

agreed to the appropriation made by Miller of the $5000 in part liquidation of the Haggerty mortgage; or, at least, that he acquiesced in such appropriation subsequently to its being made, which was equivalent to a previous agreement. His conduct certainly was unlike that of a person who contemplated setting up a claim to any part of the proceeds of the New-York property coming through his wife. He knew of the sale, and that the proceeds were in the hands of Miller, yet he suffered them to remain there, making no claim by virtue of his marital rights. He certainly knew of the appropriation shortly after it had been made, if he did not at the time, yet he made no objection to it. He never called on Miller for any explanation of the matter. He made no claim to the land on account of the payment. In 1834, two years after the payment, and when he must have known the precise state which the trust property was in, he accepted a deed of appointment from his wife of an estate for life in the premises, to commence at her death, in which deed the trusts showing that the property was held for her sole and separate use, were recited. Neither at the time this appointment was accepted, nor in his answer, did he make any claim to the proceeds of the appellant's interest in the New-York property, nor pretend that it was not agreed to be his wife's, and to be considered as a part of her separate estate. But it is urged, on the other hand, that he made no claim, or set on foot any proceedings to assert his rights in the estate derived from his wife, for the reason that he was in common with her, in the use and enjoyment of the farm on Long Island, and was always in the expectation of obtaining from her an appointment that would secure to him a jointure in it; and that if he is now compelled to relinquish the use and enjoyment of the premises, and be disappointed in his expectations of obtaining an interest therein, his acts ought not to be regarded as an acquiescence in the appropriation for such purposes. I think there is force in this argument in respect to $3000, parcel of the sum realized from the appellant's real estate in the city of New-York; but none as to the additional $2000 of that sum. The respondent admits in his answer, that at the time of the purchase of the

Martin *v.* Martin.

Long Island farm, it was contemplated and agreed on his part, that the first payment on the Haggerty mortgage, which was the sum of $2000, to become due in two years from the date of the purchase, should be made out of the proceeds of the appellant's interest in the New-York property, and that he so informed Richards at the time of the execution of the declaration of trust. He had therefore agreed, prior to the execution of the trust deed, which was to give to his wife the separate estate, that $2000 of the proceeds of her property should go to proportionably discharge the purchase money, and with this agreement fully understood, and in view of its effectual consummation, the declaration of trust was executed and delivered to the respondent. I find it nowhere expressly alleged or set up in the answer, that this agreement was a conditional one, only to operate in the event of the respondent's obtaining an interest in the premises; and his subsequent acquiescence in the payment of the sum contemplated by the agreement, must be considered as an indication of an intention not to avoid it. About the period that the sum of $2000 fell due on the Haggerty mortgage, it was paid, and it is to be inferred from the respondent's admissions and the facts proved in the case, with his assent. There would be no equity, therefore, as against the appellant, to revive a right in the respondent's behalf that he evidently assented to part with absolutely. But with regard to the further amount of $3000 paid on the Haggerty mortgage before it fell due, there is no admission of the respondent of an assent or agreement on his·part that the payment should be made from funds realized by a sale of the appellant's property. Indeed, it is expressly alleged in the answer of Martin, that the balance of the mortgage, after the first payment of $2000 had been made, was to be paid by the respondent himself out of certain moneys expected to be received by him from the corporation of the city of Brooklyn. · It is true that there was an apparent acquiescence of more than six years in the specific appropriation of the money by Miller; but this was, as has been urged, whilst the respondent was in the enjoyment of the prop erty, and whilst he hoped and expected, by the act of the wife,

to obtain a legal interest therein. Had the appellant imme-
diately on the execution of the trust deed, strictly asserted her
rights thereunder as against the respondent, and the latter had,
for more than six years, quietly acquiesced in the appropriation
of the $3000 for the discharge of the mortgage, there would
have been good reason for inferring an assent on his part to the
appropriation for the absolute benefit of the wife; but I cannot
arrive at the conclusion under the facts of this case, that the
husband would at any time have consented that his whole
marital interest in his wife's real estate in New-York, should
go to the discharge of an incumbrance on her separate property,
whilst he was excluded from any enjoyment thereof, or any
expectation of an interest therein. To my mind the facts of
the case do not present such a case of acquiescence in the ap-
propriation of the $3000, as to exclude the respondent from
setting up any claim to an interest in that sum in the event of
giving full effect to the declaration of trust.

The appellant now asks that effect may be given to that
declaration; that the respondent may be restrained from inter-
fering with the property; and the rents, issues and profits there-
of may be appropriated and paid to her exclusively. The
$3000 has gone into the land; it is but just and equitable,
therefore, that he should have a lien thereon to that extent, so
as to entitle him to receive such sum, subject to the balance
due upon the mortgage to Haggerty, which should be first paid.
I should desire much to save for the appellant the whole of the
interest in the Long Island farm, after the discharge of the
mortgage. It appears that it is all that is left to her of a con-
siderable fortune brought to a husband who is now insolvent.
But it cannot be done consistently with a due regard for the
rights of the respondent.

Several minor questions, affecting to some extent the rights
of the respective parties, were raised during the progress of the
case; but coinciding fully with the views of the chancellor re-
specting them, I have intentionally refrained from their dis-
cussion.

I am of the opinion that the decree of the chancellor should

be modified so as to strike therefrom the words "five thousand dollars," wherever they occur in such decree, and insert in' lieu thereof the words "three thousand dollars."

Decree accordingly.